**SINGLETON SCHREIBER, LLP**
CHRISTOPHER R. RODRIGUEZ, SB# 212274
ANDREW D. BLUTH, SB# 232387
MICHELLE M. MEYERS, SB# 236387
TRENT NELSON, SB#340185
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515
E-Mail: crodriguez@singletonschreiber.com
E-Mail: abluth@singletonschreiber.com
E-Mail: mmeyers@singletonschreiber.com
E-Mail: tnelson@singletonschreiber.com

Attorneys for Plaintiff, MARIA BADIN,
individually and on behalf of all others
similarly situated

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA BADIN, an individual; on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LIBERTY MUTUAL INSURANCE COMPANY; LIBERTY MUTUAL FIRE INSURANCE COMPANY; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 3:25-cv-00163-RSH-AHG<br><br>**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## FIRST AMENDED COMPLAINT

Plaintiff Maria Badin ("Plaintiff") by and through her undersigned counsel, on her own behalf and on behalf of all those similarly situated, hereby sues Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, Liberty Insurance Corporation (collectively referred to herein as "Liberty Mutual" or "Defendant") and Does 1-100 and for this Complaint, alleges upon information and belief, and based on

the investigation to date of her counsel, as follows:

## INTRODUCTION

"**Put people first** [–] Act with empathy, dignity and respect"

"**Be open** [–] Engage with all people and possibilities"

"**Act Responsibly** [–] Do what's right and follow through"

"**Make things better** [–] Be proactive and challenge the status quo"

"**Keep it simple** [–] Be clear and transparent"

Liberty Mutual[1]

1.     This is a class action brought for the benefit and protection of Plaintiff and all other similarly situated individuals who were, or are, California policyholders of homeowners insurance with Liberty Mutual and who have been, or will be, wrongfully denied renewal of their existing insurance policies by Liberty Mutual.

2.     Driven by a desire to maximize profits, property casualty insurance companies, including Liberty Mutual, has engaged in a troubling trend of dropping California homeowners' insurance policies like flies. California homeowners, who have dutifully paid their premiums for years, have been, and are, being blindsided by Liberty Mutual's nonrenewal notices informing them their policy will not continue—for stated reasons that are demonstratively false.

3.     Property casualty insurance is a massive industry. Over 90 percent of all U.S. homeowner's have property casualty insurance.[2] According to the National Association of Insurance Commissioners, the property casualty insurance industry earned $88 billion in profits in 2023, marking the industry's most profitable year of all time.[3] From January 1, 2024, to June 30, 2024, profitability net income for the property

---

[1] Liberty Mutual Identity and Values, https://www.libertymutualgroup.com/about-lm/corporate-information/identity-values (last accessed on December 19, 2024)
[2] https://consumerfed.org/wp-content/uploads/2024/03/Exposed-UninsuredHomes-1.pdf
[3] https://content.naic.org/sites/default/files/inline-files/2023%20Annual%20Property%20%26%20Casualty%20Insurance%20Industries%20Analysis%20Report.pdf

PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL

insurance industry skyrocketed by over 800 percent to $99.1 billion dollars compared to the same period last year in 2023, putting the industry on pace to shatter 2023's record profits.[4]

4.    Liberty Mutual, one of the largest and most profitable property casualty insurance companies in the United States, is reaping the benefits of the record-breaking industry earnings, crediting much of its success to its recent underwriting strategies. As outlined in Liberty's Third Quarter of 2024 Results Report, Liberty Mutual Holdings Company President and CEO, Tim Sweeney, touted that "[f]or the third quarter, we reported net income attributable to [Liberty Mutual Holdings Company] of 892 million, reflecting strong underwriting performance . . . [o]ur targeted underwriting strategies continue to drive strong financial results, with a 4.0 improvement in the underlying combined ratio to 88.1 percent…."[5]

5.    By way of this action, Plaintiff, on behalf of herself and all others similarly situated seek damages, restitution, injunctive relief, public injunctive relief, and other relief necessitated by Liberty Mutual's unfair, unlawful, and fraudulent actions in connection with their "strong underwriting performance" which—in reality—has resulted in the wrongful nonrenewal of tens of thousands of homeowners' insurance policies in the state of California. Plaintiff on behalf of herself and all others similarly situated seek an order permanently enjoining Liberty Mutual from engaging in these ongoing unlawful, unfair, and fraudulent practices, and civil penalties and damages available under California law.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over the claims and causes of action asserted herein under 28 U.S.C. section 1332(d) of the Class Action Fairness Act because Plaintiff is a citizen of a state different from Defendant, there are at least 10 putative

---

[4] https://content.naic.org/sites/default/files/pc-and-title-2024mid-year-industry-report.pdf
[5] https://www.libertymutualgroup.com/documents/q3-2024-earnings-release.pdf

PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL

class members, and the amount in controversy for the putative class members exceeds the aggregate sum of $5,000,000.

7.    This Court has personal jurisdiction over Defendants Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Insurance Corporation because these entities conduct business and operate in San Diego County, within the State of California.

## **THE PARTIES**

8.    At all relevant times, Plaintiff Maria Badin was and has been a citizen of the State of California and a resident of San Diego County. At all relevant times, Plaintiff owned a home in Poway, California, where she had maintained a homeowners insurance policy with Liberty Mutual for approximately 31 years (the "Policy").

9.    Defendants Liberty Insurance Corporation, Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company (collectively "Liberty Mutual" or "Defendant") are comprised of affiliated corporate entities, with a principal place of business in Boston, Massachusetts. These entities, individually or collectively, through an integrated corporate structure (the details of which Plaintiff is presently unaware) are engaged in a business involving the advertising, marketing, sale, and administration of casualty property insurance, including homeowners insurance throughout the United States and other territories. Liberty Mutual is licensed to conduct business and does business throughout the State of California, including this county.

10.    The true name and capacities of the Defendants sued herein as Does 1-100, and each of them, whether corporate, individual, municipal or otherwise are unknown to Plaintiff at this time, who therefore sues said Doe Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each defendant designated herein as a Doe Defendant caused injuries and damages proximately thereby to Plaintiff as hereafter alleged, and that each Doe Defendant is liable to Plaintiff for the acts and omissions alleged herein below, and the resulting injuries to Plaintiff, and

PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL

damages sustained by Plaintiff. Plaintiff will amend this Complaint to allege the true names and capacities of said Doe Defendants when that same is ascertained.

## FACTUAL ALLEGATIONS

11.   Plaintiff has owned her home in Poway, California, since November 1993. From 1993 until November 22, 2024, Plaintiff was a loyal customer of Liberty Mutual , maintaining the Policy and making timely payments in exchange for coverage.

12.   In or around late August 2024, Plaintiff unexpectedly received a notice in the mail from Liberty Mutual, informing her that her Policy would be nonrenewed, effective November 22, 2024. The notice stated that the nonrenewal was the result of an underwriting review and that the reason for nonrenewal was the condition of the property, specifically due to the presence of "algae/mildew/mold/moss" on the roof of her home. (See Exhibit 1.)

> We are sorry to inform you that your above-referenced homeowners insurance policy is non-renewed, effective 12:01 a.m. on November 22, 2024.
>
> This non-renewal is the result of an underwriting review. The reason for non-renewal is:
>
> • Condition of property
>
> Underwriting Comments
> Roof - Algae / mildew / mold / moss

13.   Perplexed by the notice, given that Plaintiff knew there was no algae, mildew, mold, moss on her roof, Plaintiff located her Policy for guidance. In accordance with a written assurance set forth in the Policy stating, "[i]f a problem arises concerning your insurance, Liberty Mutual will make every effort to resolve the matter. Call your service office for assistance," Plaintiff called Liberty Mutual's service office. (See Exhibit 2 at p.6.)

> **Important Messages** *(continued)*
>
> A notice for our customers: If a problem arises concerning your insurance, Liberty Mutual will make every effort to resolve the matter. Call your service office for assistance.

PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL

14.    During this call, an agent for Liberty Mutual informed Plaintiff, for the first time, that Liberty Mutual recently performed an aerial inspection of her home utilizing aerial footage which indicated that algae, mold, moss, or mildew was on the roof of Plaintiff's home (the "Aerial Inspection Report"). Plaintiff informed the Liberty Mutual agent that she was sure this was a mistake and there was no algae, mildew, mold, or moss on her roof. Plaintiff, moreover, requested that Liberty Mutual provide her a copy of the Aerial Inspection Report. Liberty Mutual agreed to provide Plaintiff with a copy, however, did not offer to collaborate with Plaintiff in any way to help her maintain her existing Policy.

15.    Liberty Mutual later provided Plaintiff with a copy of the Aerial Inspection Report, indicating that the inspection took place on July 2, 2024, and was conducted by "photo only." (See Exhibit 3.) Below is the photo included in the report, which, according to Liberty Mutual, purportedly shows algae, mold, moss, or mildew on her roof.

### Photos



< Sun May 12 2024 >

PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL

16.     Thereafter, in or around early September 2024, Plaintiff hired (and paid for) an independent, licensed roofing company to inspect the condition of her roof in response to Liberty Mutual's claim that her roof was contaminated with mold, moss, algae, and/or mildew (the "Physical Inspection Report"). As expected, the Physical Inspection Report confirmed that the roof was "in incredible shape," with no evidence of algae, mold, moss, or mildew. The photograph below is one of many included in the report which clearly does not show any signs of algae, mold, moss, or mildew on Plaintiff's roof. (See Exhibit 4.)



17.     Plaintiff then emailed a copy to Liberty Mutual requesting Liberty Mutual to review the Physical Inspection Report and rescind the nonrenewal.

18.     On or around October 2, 2024, Liberty Mutual responded to Plaintiff, thanking her for documentation to verify the conditions of her property and informing her that "upon reviewing the documentation, the below hazard(s) appear to still be

7

present at your property, therefore the nonrenewal decision remains valid for this policy effective 11/22/2024 at 12:01 am. . ." (See Exhibit 5.)

19.    Following receipt of Liberty Mutual's response, Plaintiff, again, placed a call to Liberty Mutual's service line, and spoke to one or more Liberty Mutual agents. Despite Plaintiff's repeated requests for Liberty Mutual to consider the findings of the Physical Inspection Report, Liberty Mutual informed Plaintiff that Liberty Mutual will not be renewing her Policy because it had, nevertheless, concluded that algae, mold, moss, or mildew was on her roof.

20.    As a result of Liberty Mutual's wrongful conduct as outlined above, Plaintiff was compelled to scramble to find a new insurance provider for her home. After numerous unsuccessful attempts to find another insurer, as a last resort, Plaintiff obtained coverage through the California FAIR Plan, which has resulted in higher costs and a reduced quality of coverage.

## CLASS ACTION ALLEGATIONS

21.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class action on her own behalf and on behalf of all those similarly situated persons. The proposed class is defined as follows:

> During the fullest period permitted by law, all owners of Liberty Mutual homeowners' insurance policies who were denied renewal based on a condition of their property that was misrepresented by Liberty Mutual (the "Class").

22.    Excluded from the Class are assigned judges and members of their families within the first degree of consanguinity; Liberty Mutual; and Liberty Mutual's subsidiaries, affiliates, officers, and directors.

23.    The requirements of Federal Rule of Civil Procedure 23 are satisfied for the proposed Class.

**Numerosity:** The proposed Class is so numerous that individual joinder of all the members is impracticable because members of the Class number in at least hundreds, thousands or tens of thousands. The precise number of Class members and their

identities are unknown to Plaintiff at this time but are objectively ascertainable and will be determined through appropriate discovery and other readily available means.

24.    Liberty Mutual possesses objective evidence as to the identity of each Class member and, to a reasonable degree of certainty, the harm suffered by each Class member, including without limitation corporate records.

25.    Class members may be notified of the pendency of this action by mail, publication and/or through the records of Liberty Mutual.

26.    **Commonality and Predominance:** There are common questions of law and fact affecting Plaintiff and Class members. Common legal and factual questions include, but are not limited to:

    a.  Whether Liberty Mutual conducted aerial inspections of Plaintiff and Class members insured properties;

    b.  Whether Liberty Mutual utilizes airplanes, drones, and/or satellites to conduct aerial inspections of Plaintiff's and Class members' insured properties;

    c.  Whether Liberty Mutual's aerial inspections of Plaintiff's and Class members' insured properties yield accurate results;

    d.  Whether Liberty Mutual  knew or should have known that Liberty Mutual's aerial inspections of Plaintiff's and Class members' insured properties produced inaccurate findings;

    e.  Whether Liberty Mutual misrepresented the reason or reasons for nonrenewal of policies in its notices of nonrenewal sent to Plaintiff and Class members and if so, whether Liberty Mutual's conduct was intentional;

    f.  Whether the reason or reasons for nonrenewal of policies stated by Liberty Mutual were specific as required by California Insurance Code section 678;

g. Whether Liberty Mutual's conduct as set forth herein violated any provision of California Insurance Code section 790.03;

h. Whether Liberty Mutual acted in good faith and fair dealing in response to any issues presented to them concerning the nonrenewal of Plaintiff's and Class members' policies;

i. Whether by the misconduct set forth in this Complaint, Liberty Mutual engaged and continue to engage in unfair, fraudulent, or unlawful business practices;

j. Whether Plaintiff and Class members are entitled to recover statutory attorney's fees;

k. Whether Plaintiff and Class members are entitled to civil penalties; and

l. The appropriate measure of the damages that have been sustained by Plaintiff and Class members.

27. Liberty Mutual engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of himself and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

28. **Typicality:** Plaintiff's claims are typical of the claims of the proposed Class because Plaintiff and Class members were injured due to Liberty Mutual's uniform course of conduct concerning the nonrenewal of Plaintiff and Class members policies.

29. The claims of Plaintiff and each member of the Class are identical.

30. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the Class.

31. Plaintiff's interests do not conflict with the interests of the Class she seeks to represent. Plaintiff has retained counsel competent and experienced in prosecuting class actions, and Plaintiff intends to vigorously prosecute this action.

32. **Superiority:** The class mechanism is superior to other available means for

the fair and efficient adjudication of the claims of Plaintiff and Class members.

33.     Treatment of litigation as a class action will permit a vast number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

34.     Individual Class members will not wish to undertake the burden and expense of individual cases.

35.     In addition, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system.  Individualized ligation also presents the potential for inconsistent or contradictory judgments.

36.     In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

37.     Questions of law and fact common to all Class members predominate over any questions affecting only individual Class members. Injuries sustained by Plaintiff and Class members flow, in each instance, from a common nucleus of operative facts as set forth herein.

38.     In each case, Liberty Mutual's actions caused harm to all Class members as a result of such conduct. The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

39.     Proposed Class counsel possesses the knowledge, experience, reputation, ability, skill, and resources to represent the Class and should be appointed lead counsel for the Class.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

### (By Plaintiff, Individually, and on Behalf of the Class)

40.     Plaintiff incorporates by reference and realleges each and every allegation stated above as though fully set forth herein.

41.    Liberty Mutual has breached, and continue to breach, homeowner insurance policies, including Plaintiff's policy, as well as the statutory mandates regarding such policies, by amongst other things, misrepresenting conditions to Plaintiff and the Class members of their insured properties, in an effort to justify their decision to not renew the policies.

42.    Consistent with California Insurance Code section 678, at all relevant times, Liberty Mutual was, and is, required to mail a written notice of nonrenewal to Plaintiff and the Class Members, at least 75 days before the policy expiration, and such notice "shall contain . . . [t]he specific reason or reasons for the nonrenewal."

43.    Liberty Mutual mailed notices of nonrenewal to Plaintiff and the Class members citing the reason or reasons for the nonrenewal of their policies. Liberty Mutual's stated reasons within the notices sent to Plaintiff and Class members were not specific and false, misleading, and deceptive.

44.    All of the aforementioned conduct, individually and collectively, constitutes material unexcused breaches of the policy in violation of California law. To the extent any contractual obligations, duties, or conditions are imposed on policy owners, those obligations, duties, and conditions have been waived and/or have been excused due to Liberty Mutual's material breaches.

45.    Liberty Mutual's conduct caused injury to Plaintiff and the Class Members by failing to include the specific and truthful reason or reasons of nonrenewal and instead misrepresenting conditions of Plaintiff's and Class members' insured properties. Liberty Mutual's conduct, as set forth herein, legally and proximately caused Plaintiff and Class members to suffer harm through loss of coverage, out of pocket expenses, loss of peace of mind related to the existence of coverage, the capacity to utilize years of investment in wrongfully terminated policies, and compulsion to purchase alternative insurance at higher costs for lesser coverage.

## SECOND CAUSE OF ACTION

### VIOLATION OF BUSINESS AND PROFESSIONS CODE

### SECTIONS 17200, *et seq.*

### (By Plaintiff, Individually, and on Behalf of the Class)

46.     Plaintiff incorporates by reference and realleges each and every allegation stated above as though fully set forth herein.

47.     California Business and Professions Code Section 17200 et seq. ("Section 17200"), also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

48.     By engaging in the above-described conduct, Liberty Mutual, acted in a manner that is unlawful, unfair, and fraudulent, and have thus engaged in unfair business practices to the extreme detriment of Plaintiff and the Class members, which is conduct prohibited under Section 17200.

49.     Liberty Mutual's conduct by deceptively misrepresenting condition(s) of Plaintiff's and Class members' insured properties violated at least the "unfair" prong of the UCL because its utility is significantly outweighed by the gravity of the harm that it imposes on consumers. Liberty Mutual has alternatives to this conduct that would be less harmful to consumers, but they do not employ them because their present conduct is more profitable and beneficial to themselves than these alternatives. In addition, Liberty Mutual's conduct of not renewing homeowners' insurance policies based on misrepresentations violates the "unfair" prong because the practice is oppressive, unscrupulous, and/or substantially injurious to consumers.

50.     Liberty Mutual's conduct violates the "fraudulent" prong because Liberty Mutual falsely and deceptively informed Plaintiff and Class Members that their existing homeowners insurance policy would not be renewed due to conditions of the property that simply have not, and do not, exist. Liberty Mutual acted in this manner in an effort to obtain maximum profits and benefits to themselves at the expense of Plaintiff.

13

51.    Liberty Mutual's misrepresentations of the basis for nonrenewal of Plaintiff's and Class Members existing homeowners insurance policies is unlawful and violative of California Insurance Code section 678 and/or California Insurance Code section 790.03.

52.    As a direct and proximate result of Liberty Mutual's unfair, unlawful, and deceptive business practices, Plaintiffs and the Class Members have suffered injury in fact.

53.    As a direct and proximate result of Liberty Mutual's unfair, unlawful, and deceptive business practices, Liberty Mutual has been unjustly enriched and should be ordered to make restitution to Plaintiffs and the members of the class pursuant to Business and Professions Code Sections 17203 and 17204.

54.    The unfair, unlawful, and fraudulent business practices of Liberty Mutual described herein present a continuing threat to Plaintiff, Class Members, and members of the general public in that Liberty Mutual persists and continues to engage in these practices and will not cease doing so unless and until forced to do so by this Court. Liberty Mutual's conduct is causing, and will continue to cause, irreparable injury to Plaintiff and the Class Members unless enjoined or restrained.

## THIRD CAUSE OF ACTION

### BAD FAITH

### (By Plaintiff, on Behalf of Herself Only)

55.    Plaintiff incorporates by reference and realleges each and every allegation stated above as though fully set forth herein.

56.    At all relevant times, Plaintiff was the owner of the Policy and was entitled to the benefit of the implied covenant of good faith and fair dealing associated with those benefits.

57.    At all relevant times, Liberty Mutual owed Plaintiff an obligation to perform the express and implied obligations imposed by the Policy, to act in good faith, to deal fairly with Plaintiff, and to not interfere with Plaintiff's rights to receive the

specific and truthful reason or reasons for Liberty Mutual's nonrenewal of her Policy. These duties included, but were not limited to, complying with the provisions of California law arising from Liberty Mutual's specific duties imposed and arising from the privilege of conducting business in the state of California.

58.    At all relevant times herein, Liberty Mutual violated California Insurance Code section 678 and/or California Insurance Code section 790.3 by failing to provide Plaintiff with the specific and truthful reason or reasons for nonrenewal within Liberty Mutual's nonrenewal notice sent to Plaintiff.

59.    At all relevant times herein, Liberty Mutual had the obligation to be honest, fair, and impartial in the consideration of Plaintiff's Policy, as well as refrain from asserting its interests over that of Plaintiff. These obligations include providing Plaintiff with the specific and truthful reason or reasons for nonrenewal of her Policy and to not misrepresent any such reason or reasons. These obligations also include Liberty Mutual's willingness to make every effort to resolve a matter when a problem arises concerning Plaintiff's insurance policy.

60.    Liberty Mutual, by and through its officers, directors, and other managerial agents, consciously ignored the application of California law and instituted a business practice and course of conduct designed to intentionally violate such provisions. Liberty Mutual knowingly and consciously deprived Plaintiff of the specific and truthful reason or reasons for nonrenewal for its own financial benefit.

61.    Plaintiff has suffered injuries, economic and non-economic damages, and harm legally caused by Liberty Mutual's wrongful conduct as set forth herein. Plaintiff has also suffered consequential economic and non-economic damages in the nature and amount to be proven at the time of trial. These damages include emotional distress, concern, anger, and worry concerning the nonrenewal of policies premised upon false and unspecific reasons.

62.    Liberty Mutual's  wrongful conduct was intended by Liberty Mutual  to cause injury to Plaintiff or was despicable conduct carried out by Liberty Mutual with

willful and conscious disregard of the rights of Plaintiff, subjected Plaintiff to cruel and unjust hardship in conscious disregard to her rights, and was an intentional misrepresentation, deceit, or concealment of a material fact known to Liberty Mutual with the intention to deprive Plaintiff of property, legal rights or to otherwise cause injury, such as to continue malice, oppression, or fraud under California Civil Code section 3294, so as to justify the imposition of punitive damages and to deter Defendants and others from engaging in similar conduct in the future.

63.    Liberty Mutual's wrongful conduct was an unfair and deceptive act and practice which caused injury to Plaintiff. Plaintiff is an elderly person within the meaning of California Civil Code section 3345 and as a consequence of Defendant's wrongful actions herein, Plaintiff is entitled to a trebling of any damages imposed by the trier of fact pursuant to Section 3294 of the California Civil Code.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the putative Class members, pray for judgment as follows:

a.    Determining that this action is a proper class action and certifying the Class, as defined herein;

b.    Appointing Plaintiff as a Class representative;

c.    Appointing the undersigned as Class counsel;

d.    Finding Liberty Mutual liable to Plaintiff and Class members for damages in such amount(s) as the Court or Jury may determine;

e.    Awarding statutorily provided damages to Plaintiff and Class members as appropriate;

f.    Awarding restitutionary disgorgement and all other forms of equitable monetary relief to Plaintiffs and Class members;

g.    Awarding punitive damages;

h.    Awarding a trebling of any punitive damages;

i.    Awarding pre- and post-judgment interest;

16

j.    Awarding injunctive relief, including public injunctive relief, as claimed herein or as the Court may deem proper;

k.    Awarding Plaintiff and Class members attorney fees and all litigation costs as allowed by law; and

l.    Awarding such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  April 18, 2025                    SINGLETON SCHREIBER, LLP

By:    */s/Christopher R. Rodriguez*
Christopher R. Rodriguez
Attorneys for Plaintiff, MARIA BADIN,
individually, and on behalf of all others
similarly situated

PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I, CHRISTOPHER R. RODRIGUEZ, hereby certify that on April 18, 2025, the foregoing document was filed via the Court's CM/ECF system, which will automatically serve and send email notification of such filing to all registered attorneys of record.

*/s/ Christopher R. Rodriguez*
Christopher R. Rodriguez

PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL