UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA BADIN, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No.: 25-cv-163-RSH-AHG<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br><br>[ECF No. 28] |

Pending before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 28. For the reasons below, the Court grants in part and denies in part the motion.

## I. BACKGROUND

### A. Factual Background

The instant case is a putative class action filed against Liberty Mutual Fire Insurance Company ("LMFIC"), Liberty Mutual Insurance Company ("LMIC"), Liberty Insurance Corporation ("LIC"), and Doe defendants for the alleged breach of homeowners' insurance policies.

  Plaintiff's operative complaint alleges as follows. On or around August 2024, Plaintiff received a notice from Defendants stating that her homeowners' insurance policy would not be renewed. ECF No. 22 ¶ 12. The notice stated the reason for nonrenewal was the presence of "algae/mildew/mold/moss" on the roof of her house. *Id.* Plaintiff made efforts to resolve the matter with Defendants but was unsuccessful. *Id.* ¶ 13-14. In September 2024, Plaintiff hired an independent, licensed roofing company to inspect her roof. *Id.* ¶ 16. Plaintiff's roofing company reported that her roof was "'in incredible shape' with no evidence of algae, mold, moss, or mildew." *Id.* Plaintiff emailed this report to Defendants, and Defendants responded to Plaintiff, stating that "the nonrenewal decision remains valid for this policy." *Id.* ¶ 18. Thereafter, Plaintiff made "repeated requests" for Defendants to consider the findings of Plaintiff's inspection report. *Id.* ¶ 19. Nonetheless, Defendants informed Plaintiff that they concluded that algae, mold, moss, or mildew was on her roof. *Id.* Plaintiff then made numerous unsuccessful attempts to find a new insurer and ultimately obtained coverage through the California FAIR plan, where she pays higher costs and receives a reduced quality of coverage. *Id.* ¶ 20.

### B. Procedural History

  On December 19, 2024, Plaintiff filed the instant putative class action in the Superior Court of California, County of San Diego, against LMFIC, LMIC, and Doe defendants. ECF No. 1-2 (the "Complaint"). On January 23, 2025, defendants LMFIC and LMIC removed the case to this Court under the Class Action Fairness Act ("CAFA"). ECF No. 1.

  On February 24, 2025, Plaintiff filed a motion to remand this action to state court. ECF No. 8. The Court thereafter denied the motion. ECF No. 18.

  Also on February 24, 2025, Defendants filed a motion to dismiss the complaint. ECF No. 9. On April 11, 2025, Plaintiff filed a motion for leave to amend her Complaint. ECF No. 20. On April 15, 2025, the Court granted Plaintiff's motion for leave to amend and denied Defendants' motion to dismiss as moot. ECF No. 21.

//

On April 18, 2025, Plaintiff filed an Amended Complaint adding LIC as a defendant. ECF No. 22. The Amended Complaint brings claims for: (1) breach of contract; (2) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (3) breach of the implied covenant of good faith and fair dealing. Plaintiff seeks to represent a class consisting of "all owners of Liberty Mutual homeowners' insurance policies who were denied renewal based on a condition of their property that was misrepresented by Liberty Mutual." *Id.* ¶ 22. The Amended Complaint seeks damages, disgorgement, and injunctive relief.

On May 12, 2025, defendants LIC, LMIC, and LMFIC (collectively "Defendants") filed the instant motion to dismiss and to strike.[1] ECF No. 28. The motion is fully briefed. ECF Nos. 30, 32.

## II.    LEGAL STANDARD

### A.    Lack of Article III Standing Under 12(b)(1)

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Article III, Section 2 of the U.S. Constitution requires that a plaintiff have standing to bring a claim. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Article III standing requires that a plaintiff show that he or she has (1) "suffered an injury in fact" that is "concrete and particularized" and "actual or imminent," (2) "that is fairly traceable to the challenged conduct of the defendant," and (3) "that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-39 (2016) (citing *Lujan*, 504 U.S. at 560). The plaintiff has the burden to establish standing, and at the pleading stage, "the plaintiff must clearly allege facts demonstrating each element." *Id.* (cleaned up). "[L]ack of Article III standing requires dismissal for lack of

---

[1]    In the alternative to seeking dismissal of all claims, Defendants' motion seeks to strike the Amended Complaint's requests for class and injunctive relief. ECF No. 28 at 2.

subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

### B.    Failure to State a Claim under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a plaintiff must also plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6). The plausibility standard demands more than a "formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557). Instead, a complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When reviewing a motion to dismiss under Rule 12(b)(6), courts assume the truth of all factual allegations and construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (citing *Nat'l Wildlife Fed'n v. Espy*, 45 F.3d 1337, 1340 (9th Cir. 1995)). But a court "disregard[s] '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678–79). Likewise, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) (citing *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). "After eliminating such unsupported legal conclusions, [courts] identify 'well-pleaded factual allegations,' which [are] assume[d] to be true, 'and then [courts] determine whether they plausibly give rise to an entitlement to relief.'" *Telesaurus VPC*, 623 F.3d at 1003. Dismissal under Rule 12(b)(6) is proper where there is no cognizable legal theory to support the claim or when there is an absence of sufficient factual allegations to support a

facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

## III.   ANALYSIS

### A.   Standing

Defendants argue that: (1) Plaintiff lacks Article III standing as to defendants LMIC and LMFIC because Plaintiff "was not insured by either entity," but rather by LIC; and (2) Plaintiff lacks standing to seek injunctive relief because she is no longer an LIC insured and will not benefit from an injunction. ECF Nos. 28-1 at 10-11, 22.

Defendants' first argument is effectively that Plaintiff has sued the wrong entities. Even if true, this argument would not reflect a lack of injury to Plaintiff or deprive Plaintiff of standing. *See Acosta v. Perez*, No. 1:19-cv-01224-AWI-EPG, 2020 U.S. Dist. LEXIS 80096, at *17-18 (E.D. Cal. May 6, 2020) (a defendant's contention that another party is legally responsible for the plaintiff's harm does not deprive the plaintiff of standing); *Davis v. Wells Fargo*, 824 F.3d 333, 348-50 (3d Cir. 2016) (the "you've got the wrong party" defense is not a standing issue but rather a merits issue that should be considered under Rule 12(b)(6) or Rule 56)).

As to Defendants' second argument, a plaintiff seeking injunctive relief must proffer evidence that there is "a sufficient likelihood that [she] will be wronged in a similar way" in the future. *Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Bates v. UPS*, 511 F.3d 974, 985 (9th Cir. 2007) (holding that a plaintiff must establish a "real and immediate threat of repeated injury" to demonstrate Article III standing to seek injunctive relief). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Here, Plaintiff seeks to enjoin Defendants from engaging in the alleged "unlawful, unfair, and fraudulent practice[]" of refusing to renew Liberty Mutual homeowners' insurance policies for pretextual reasons. ECF No. 22 ¶ 5. But she does not allege facts to indicate a sufficient likelihood that she will be wronged in a similar way in the future.

Plaintiff is no longer a Liberty Mutual policyholder, and she has not established she is at risk of future nonrenewal of a Liberty Mutual policy. *See Hamelin v. Allstate Ins. Co.*, No. 01-CV-7954, 2002 WL 441581, at *3 (C.D. Cal. Mar. 12, 2002) (stating that where the plaintiff was no longer a policyholder of the defendant, there was no likelihood of future injury). The Court therefore grants Defendants' 12(b)(1) motion to dismiss Plaintiff's claim for injunctive relief, but denies the remainder of the 12(b)(1) motion.

### B. Failure to State a Claim

#### 1. Breach of Contract

To successfully bring a breach of contract claim in California, a plaintiff must show: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). In an action for breach of a written contract, a plaintiff "must identify with specificity the contractual obligations allegedly breached by the defendant." *Kaar v. Wells Fargo Bank, N.A.*, No. C 16-01290 WHA, 2016 WL 3068396, at *3 (N.D. Cal. June 1, 2016) (citing *Misha Consulting Group, Inc. v. Core Educ. & Consulting Solutions, Inc.*, No. 13-04262-RMW, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013)).

Defendants argue that Plaintiff fails to state a claim for breach of contract against LIC because Plaintiff "has not pointed to any policy provision that was breached." ECF No. 28-1 at 13. However, Plaintiff's theory of breach is based on a violation of Section 678 of the California Insurance Code, which is incorporated as a matter of law into the insurance contract. *See California Fair Plan Assn. v. Garnes*, 11 Cal. App. 5th 1276, 1305 (Ct. App. 2017) ("The obligations under an insurance policy are measured and defined by the pertinent statute, and the statute and the policy together form the insurance contract."). Section 678 provides that insurers who intend to not renew a policy must provide a notice of nonrenewal with "[t]he specific reason or reasons for the nonrenewal." Cal. Ins. Code § 678. Plaintiff alleges that Defendants breached this requirement by failing to provide the specific reason or reasons for non-renewal, and instead providing false and pretextual

reasons. ECF No. 22 ¶ 43. The Amended Complaint adequately indicates the term of the alleged agreement that is the subject of the alleged breach.

Defendants also argue that Plaintiff's claims for breach of contract against LMIC and LMFIC fail because Plaintiff did not have a contractual relationship with them, and only had a contractual relationship with LIC. ECF No. 28-1 at 13. It is true that the notice of non-renewal, attached to the Amended Complaint, is on letterhead of "Liberty Insurance Corporation," that is, LIC. ECF No. 24 at 4. But the document contains, at the signature line, the business name "Liberty Mutual Insurance" and also includes a logo with the words "Liberty Mutual Insurance," which is a distinct name from LIC. *Id.* Other official communications to Plaintiffs from "Liberty Mutual Insurance," also attached to the Complaint, refer variously to "Liberty Mutual," "Liberty Mutual Group," or "Liberty Mutual Insurance Company," that is, LMIC. *Id.* at 32-33. Additionally, such documents define "Liberty Mutual" to mean, collectively, "Liberty Mutual Group and its affiliates, subsidiaries, and partners." *Id.* at 27.

Defendants do not explain the relationship between the three entities, or deny their affiliation. In connection with their earlier motion to dismiss, Defendants filed what they asserted are the policy documents applicable to Plaintiff. ECF No. 9-2. These include declarations that reference "Liberty Mutual Insurance," "Liberty Mutual," and "Liberty Insurance Corporation." *See id.* at p. 5. They also include a "California Residential Property Insurance Bill of Rights" and an "Inflation Protection Endorsement" with the name "Liberty Mutual Fire Insurance Company"—that is, LMFIC—at the bottom. *Id.* at 51-53.

Similar to Defendants' own documents, the Amended Complaint uses "Liberty Mutual" to refer collectively to LIC and its affiliates, and alleges that the three Defendants "are comprised of affiliated corporate entities, with a principal place of business in Boston, Massachusetts." ECF No. 22 at p. 1 & ¶ 9. The Amended Complaint continues, "[t]hese entities, individually or collectively, through an integrated corporate structure (the details of which Plaintiff is presently unaware) are engaged in a business involving the advertising, marketing, sale, and administration of casualty property insurance, including homeowners'

insurance throughout the United States and other territories." *Id.* ¶ 9. The Amended Complaint further alleges that Plaintiff is a customer and policyholder of "Liberty Mutual." *Id.* ¶ 11. The Court concludes that Plaintiff has adequately alleged the collective action of Defendants, and the ambiguity of their corporate relationships, in a manner that warrants denial of Defendants' motion to dismiss the contract claim as to any Defendant.

### 2. Implied Covenant of Good Faith and Fair Dealing

"[E]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Moore v. Wells Fargo Bank, N.A.*, 39 Cal. App. 5th 280, 291 (Ct. App. 2019). This covenant provides that "no party to the contract will do anything that would deprive another party of the benefits of the contract." *Miller v. Zurich Am. Ins. Co.*, 41 Cal. App. 5th 247, 257 (Ct. App. 2019) (citing *Digerati Holdings, LLC v. Young Money Entertainment, LLC* 194 Cal. App. 4th 873, 885 (Ct. App. 2011)), "Like an express contract claim, the elements of an implied-in-fact contract claim are [1] a valid implied-in-fact contract, [2] the plaintiff's performance or excuse for nonperformance, [3] the defendant's breach of the agreement, and [4] the resulting damages to plaintiff." *Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 952–53 (S.D. Cal. 2021) (quoting *Iconlab Inc. v. Valeant Pharm. Int'l, Inc.*, No. 8:16-cv-01321-JLS-KES, 2017 WL 7240856, at *6 (C.D. Cal. Apr. 25, 2017)).

Defendants argue that Plaintiff fails to state a claim for breach of implied covenant because "LIC had no contractual or statutory duty to renew, and therefore, a failure to do so cannot constitute bad faith." ECF No. 28-1 at 21. However, Plaintiff's theory of breach of implied covenant is not—as Defendants argue—that Defendants breached a statutory duty to renew the policy, but rather than they acted in bad faith in providing false and pretextual reasons for not renewing the policy. ECF No. 22 ¶¶ 59-60. The Court declines to reframe Plaintiff's theory, and denies Defendant's motion to dismiss the implied covenant claim.

### 3. Unfair Competition Law

The Amended Complaint alleges that Defendants engaged in unlawful, unfair, and

fraudulent practices in violation of the UCL. *See Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020) ("The UCL prohibits unlawful, unfair or fraudulent business acts or practices. Each of these three adjectives captures a separate and distinct theory of liability.") (cleaned up).

Defendants argue that the Amended Complaint fails to state a claim under any of these three prongs. Their arguments that the Amended Complaint fails to allege "unlawful" or "unfair" conduct largely rest on their assertion that there was no violation of Section 678. As discussed above, the Court disagrees with Defendants and concludes that Plaintiff has adequately alleged a violation of this statute. The Court therefore denies Defendant's motion as to the "unlawful" or "unfair" prongs of Plaintiff's UCL claim.

Defendants argue that the Amended Complaint fails to state a claim under the "fraudulent" prong because Plaintiff has failed to plead reliance on any alleged fraud. In *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009), the California Supreme Court held that, as a matter of standing, there is "an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *Id.* at 326. The court explained that "while a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct, the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Id.* at 328. Thus, a plaintiff "is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign." *Id.* at 328; *see also Key v. Qualcomm Inc.*, 129 F.4th 1129, 1141 (9th Cir. 2025) ("[A]ny plaintiff relying on a UCL fraud theory must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions.") (cleaned up). Plaintiff does not appear to contest the applicability of such a reliance requirement, but argues that she duly pleads that she has suffered economic harm as a result of Defendants' actions. ECF No. 30 at 18. Be that as it may, Plaintiff has not adequately

pleaded the reliance required for a claim under the "fraudulent" prong of the UCL. The Court therefore dismisses Plaintiff's UCL claim to the extent that it is based on the "fraudulent" prong.

## IV.    LEAVE TO AMEND

Plaintiff requests leave to amend if the Court grants Defendants' motion to dismiss. ECF No. 30 at 26. Defendants have not opposed the request. At this stage, the Court cannot determine that such amendment would be futile. *See Knappenberger v. City of Phx.,* 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts.") (internal quotation marks omitted). Accordingly, the Court grants Plaintiff leave to amend to address the deficiencies identified herein.

## V.    MOTION TO STRIKE

Defendants argue that Plaintiff's class allegations should be stricken for pleading a "fail-safe" class. ECF No. 28-1 at 22. The Court determines that these arguments are premature at the motion to dismiss stage. *See Avina v. Patenaude & Felix, APC*, No. 20-cv-0166-BAS-MDD, 2021 WL 5990037, at *41 (S.D. Cal. Dec. 17, 2021) ("The Ninth Circuit has stated that Rule 12(b)(6) is an inappropriate vehicle for challenging class claims because a class action is a procedural device and not a claim for relief subject to the authority of that Rule; other Rules (namely, Rule 23) exist to address the fitness of claims for class certification, and differing standards of review govern orders on motions to dismiss than orders on class certification motions.") (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010)).

Additionally, in the course of arguing that Plaintiff lacks standing, Defendants make a passing request to "strike the improper references to Doe Defendants." ECF No. 28-1 at 12. The request is beyond the scope of the notice of motion, ECF No. 28, and in the Court's view is not presented in a manner sufficient to give Plaintiff adequate reason to fully respond. The Court denies this request without prejudice to Defendants seeking to strike certain language or to dismiss claims against the Doe defendants in a future motion.

10

25-cv-163-RSH-AHG

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion [ECF No. 28]. Specifically, the Court **DISMISSES** Plaintiff's request for injunctive relief as well as Plaintiff's claim based on the "fraudulent" prong of the Unfair Competition Law, but denies the motion in all other respects.

Plaintiff is **GRANTED** leave to file a Second Amended Complaint within *fourteen (14) days* of the date of this Order, limited to addressing the deficiencies identified in this Order. If Plaintiff chooses not to file an amended pleading, the Amended Complaint will remain her operative pleading. Defendants' time to respond to the operative pleading will begin to run on the earlier of the date Plaintiff files a Second Amended Complaint or fourteen (14) days from the date of this Order.

**IT SO ORDERED**.

Dated: August 13, 2025

_____
Hon. Robert S. Huie
United States District Judge