UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MARIA BADIN, an individual, on behalf of herself and all others similarly situated, et al.,
Plaintiffs,

v.

LIBERTY MUTUAL INSURANCE COMPANY, et al.,
Defendants.

Case No.: 25-cv-163-RSH-AHG

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

[ECF No. 51]

Before the Court is an unopposed motion filed by Plaintiffs seeking preliminary approval of a class action settlement in this case. *See* ECF No. 51. As set forth below, the Court grants the motion.

## I. BACKGROUND

### A. Plaintiffs' Allegations

On December 19, 2024, Plaintiffs filed their class action complaint in California Superior Court for San Diego County. ECF No. 1-2. On January 23, 2025, Defendants removed the case to federal court. ECF No. 1. Plaintiffs' operative pleading is their Second Amended Complaint ("SAC"). ECF No. 50.

Plaintiffs bring a putative class action against Liberty Mutual Insurance Company and related entities (collectively, "Liberty Mutual"), alleging that Liberty Mutual unlawfully refused to renew property casualty insurance policies based on inaccurate data gathered from aerial inspections of insureds' property. *See* ECF No. 50. Plaintiff Maria Badin alleges that in August 2024, Liberty Mutual informed her that it would not be renewing her coverage because of the presence of "algae/mildew/mold/moss" on her roof, and later informed her that Liberty Mutual had discovered this information from an aerial inspection of her home. ECF No. 50 ¶¶ 15, 17. Badin alleges that her roof had no such conditions, and that she sent Liberty Mutual a report from an independent roofing contractor confirming the same, but that Liberty Mutual declined to rescind its nonrenewal decision. *Id.* ¶¶ 19, 21. Badin alleges that she was forced to obtain coverage through the California FAIR Plan, resulting "in higher costs and a reduced quality of coverage." *Id.* ¶ 23. Other named plaintiffs, David Ginsberg, Yvonne Davis, James Gilmore, Monste Gilmore, Michael Catania, and Karen Catania make similar allegations against Liberty Mutual, and claim they were forced to obtain replacement coverage that was inferior, more expensive, or both. *Id.* at 10–20.[1] Plaintiffs bring three claims, individually and on behalf of a putative class: (1) breach of contract; (2) violation of California Business & Professions Code § 17200, *et seq.*; and (3) violation of California Insurance Code §§ 678 and/or 790.3. *Id.* ¶¶ 85–108.

**B. Procedural History**

On June 1, 2026, Plaintiffs filed their unopposed motion for preliminary approval of class action settlement. ECF No. 51. Plaintiffs seek preliminary certification of the following class:

> [A]ll California owners of Liberty Mutual homeowners' insurance policies who, during the period December 1, 2023 to

---

[1] Three of the named Plaintiffs—Badin, Ginsberg, and Davis—are bringing their claims individually and as putative class representatives. The other four defendants bring their claims individually.

> the date of the certification of a Settlement Class, were denied renewal of that policy based on a condition of their property.

ECF No. 51-1 at 15.[2]

On September 8, 2026, this Court directed the parties to provide supplemental briefing on several topics, including the fairness and reasonableness of the settlement amount, the allocation of the settlement amount, and the question of predominance. ECF No. 52 at 1–2. The parties filed a joint supplemental brief in response to the Court's order on October 8, 2026. ECF No. 53. On October 20, 2026, the Court entered an order directing further briefing. ECF No. 54 at 2–3. The parties filed separate responses to the Court's order directing supplemental briefing on November 3, 2026. ECF Nos. 55, 56.

### C. Terms of the Settlement Agreement

The Plaintiffs' motion attaches a copy of the Settlement Agreement. *See* ECF No. 51-3. Under the terms of the Settlement Agreement, Liberty Mutual will pay a non-reversionary gross Settlement Amount of $9,900,000. *Id.* at 8. The Settlement Amount will be used to pay, in addition to distributions to class members, administration expenses and costs, as well as any attorneys' fees or class representative awards ordered by the Court. *Id.* at 28. Plaintiffs' counsel will request attorney's fees of not more than twenty-five percent (25%) of the Settlement Amount, administration costs will not exceed $180,000, and the class representative award will not exceed $500 per representative. ECF No. 51-1 at 17. The Settlement Agreement is not contingent on the Court's approval of the fee awards or class representative awards that will be requested. ECF No. 51-3 at 34.

The net Settlement Amount will be apportioned among class members according to a formula based on the last known annual premium that each class member paid to Liberty Mutual, adjusted to account for differences in insurer rate schedules. *See* ECF No. 53-2 ¶¶

---

[2] "Excluded from the Settlement Class are Liberty Mutual, Liberty Mutual's officers, directors, agents, trustees, representatives, employees, principals, servants, partners, joint venturers, and/or entities controlled by Liberty Mutual." *Id.*

6–12; *see also* ECF No. 54 at 2 (deeming the jointly-submitted allocation plan docketed at ECF No. 53-2 to be part of the Settlement Agreement).

## II. LEGAL STANDARD

A motion for preliminary approval of a class action settlement must provide "information sufficient to enable [the Court] to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). The Court cannot direct notice unless the parties show that the Court will likely be able to approve the proposed settlement under Fed. R. Civ. P. 23(e)(2) and certify the class for purposes of judgment. Fed. R. Civ. P. 23(e)(1)(B); *See also In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("To guard against th[e] potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate. . . . Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.").

Pursuant to Rule 23, the Court considers the following factors in determining whether a class settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Court considers the following factors in determining whether a class is likely to be certified:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to establishing the Rule 23(a) elements, Plaintiffs must satisfy one of the three subsections of Rule 23(b). Fed. R. Civ. P. 23(b). A class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3) where:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

# III. ANALYSIS

## A. Likelihood of Class Certification

The Court begins with an analysis of the likelihood that "the court will be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). The Court may certify a class only if the Court is satisfied that elements of numerosity, commonality, typicality, and adequacy are met. Fed. R. Civ. P. 23(a). If Rule 23(a) is satisfied, the class must also fall into one of three enumerated categories. Fed. R. Civ. P. 23(b).

The Supreme Court has stated that "[s]ettlement is relevant to a class certification." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620 (internal citation omitted). That said, "other specifications of [Federal Rule of Civil Procedure 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context." *Id.* "The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria . . . are not impractical impediments—checks shorn of utility—in the settlement-class context. *Id.* at 621. The fact that "a settlement is 'fair,'" does not mean that "then certification is proper." *Id.* at 622.

### *i. Rule 23(a)'s Prerequisites*

First, the Court finds the numerosity element satisfied. The Parties estimate that the class consists of 46,000 members. ECF No. 53 at 8. That estimate is based on Liberty Mutual's internal data. *Id.* at 8 n.1. The Parties estimate that the number of class members may grow through the final approval process, but have not provided an estimate as to the upper bound of the size of the class. *Id.* Nonetheless, the Court finds that the class is sufficiently "numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

Second, the Court finds the commonality element satisfied. Commonality is satisfied where the plaintiff "demonstrate[s] that there are questions of fact and law that are common to the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). "All questions of fact and law need not be common to satisfy the rule." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Instead, "[a]lthough Rule 23(a)(2) refers to common 'questions of law or fact' in the plural, even a single common question will do." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015). To meet the commonality requirement, "a party must demonstrate that they and the proposed class members have suffered the same injury and have claims that depend on a common contention capable of class-wide resolution." *Willis v. City of Seattle*, 943 F.3d 882, 885 (9th Cir. 2019). "Thus, it is not just the common contention, but the answer to that contention, that is important: What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Alcantar*, 800 F.3d at 1052 (internal quotation marks and citations omitted). Here, the case raises common questions relating to, among other things, Liberty Mutual's classwide policies for aerial inspections and its related underwriting guidelines. The Court considers additional common questions in connection with discussing predominance further below.

Third, the Court finds the typicality element likely satisfied. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984 (internal quotation marks and citation omitted). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* (citation omitted). The class representatives in this case challenge Liberty Mutual's aerial inspection practices and bring claims for breach of contract, unfair business practices, and bad faith. *See generally* ECF No. 50. The class representatives' claims,

discussed above, do not appear to involve "unique background and factual situation[s]" which raise issues that are "not typical of . . . other members of the proposed class." *See Ellis*, 657 F.3d at 984 (internal quotation marks and citation omitted).

Fourth, the Court finds the adequacy element likely satisfied. "Determining whether representation is adequate requires the court to consider two questions: '(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis*, 657 F.3d at 985; *see also Amchem Prods.* at 625 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."). Here, the named Plaintiffs and their counsel affirm that they have no conflicts of interest with any members of the proposed class. *See* ECF No. 51-1 at 25; ECF No. 51-2 ¶ 6. The class representatives in this case, like the rest of the class, are former insureds whose policies were canceled and who were required to obtain replacement coverage. The injuries of members of the class vary only in degree, which the settlement accounts for by affording greater payments to insureds who paid higher premiums under their Liberty Mutual policies. The Court is further satisfied that Plaintiffs' counsel, given their experience as well as their prosecution of this case to date, will continue to act vigorously on behalf of the class. *See* also ECF No. 52-2 ¶¶ 21–23.

*ii. Rule 23(b)(3)*

Having found that Rule 23(a)'s prerequisites are satisfied, the Court turns to Rule 23(b)(3), under which a court may certify a class only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

a. Predominance

Because "[t]he predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," courts are "call[ed] upon . . . to give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks and citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (internal quotation marks and citation omitted). "[W]hether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (citing 2 William B. Rubenstein, *Newberg on Class Actions* § 4:63 (5th ed. 2018)).

Here, the Parties jointly submit that the case presents "numerous common questions of both law and fact affect[] Plaintiffs and members of the putative class," including:

- Whether Liberty Mutual conducted aerial inspections of class members' insured properties;
- Whether Liberty Mutual utilized aerial imagery, drones, satellites, or similar technology in evaluating insured properties for nonrenewal purposes;
- Whether Liberty Mutual's aerial inspections of those properties yielded accurate results;
- Whether Liberty Mutual knew or should have known that its aerial inspections produced inaccurate or unreliable findings;
- Whether Liberty Mutual misrepresented the reason or reasons for nonrenewal in notices sent to class members and, if so, whether such conduct was intentional;

- Whether the reasons stated in Liberty Mutual's nonrenewal notices were sufficiently specific to satisfy California Insurance Code section 678;
- Whether Liberty Mutual's conduct violated California Insurance Code section 790.03;
- Whether Liberty Mutual acted in good faith and fair dealing in responding to policyholders who challenged or sought to remedy the alleged conditions identified by Liberty Mutual;
- Whether Liberty Mutual engaged in unfair, fraudulent, or unlawful business practices in connection with the nonrenewal of California homeowners' insurance policies;
- Whether class members are entitled to statutory remedies, attorney's fees, or civil penalties; and
- The proper measure of damages, restitution, or other relief available to class members.

ECF No. 53 at 18–19. The Parties' submission also describes their pre-settlement dispute over whether predominance was met. *See id.* at 9–12. Liberty Mutual's position in that dispute was not that the foregoing were not common questions, but rather that determining liability at trial would require additional, individualized inquiries inconsistent with the predominance requirement, such as the basis for the nonrenewal decision that Liberty Mutual made as to each class member. ECF No. 55 at 11–12. Liberty Mutual adds that common evidence in Plaintiffs' case "may include applicable policies and procedures, training and implementation materials, standardized guidance or decision criteria, internal memoranda and communications concerning strategic decisions, centralized reporting or monitoring materials, and testimony from the relevant decisionmakers." *Id.* The Court concludes, in the context of the Settlement Agreement and the proposed settlement class, that common issues likely predominate over individual issues.

b. Superiority

"The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation modified). "Where

recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id.* The Court need not consider potential case management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), when deciding whether to certify a class for settlement purposes. *See Amchem Prods.*, 521 U.S. at 620.

The Court finds that each of the relevant Rule 23(b)(3) factors weigh in favor of litigating this case as a class action. It is more efficient to litigate Plaintiffs' claims here "on a classwide basis rather than in thousands of individual and overlapping lawsuits." *Wolin*, 617 F.3d at 1176. The Settlement Amount of $9,900,000 spread across 46,000 class members results in an average recovery of $215.21 before fees and costs. Even using Plaintiffs' estimate of the total potential recovery—$80,000,000—that average recovery increases to $1,739.13. The Court determines that the cost of litigating on an individual basis the complex claims advanced here would likely be an insurmountable burden to bringing these claims on an individual basis. Thus, "the class members' interests in individually controlling the prosecution or defense of separate actions" is low. *See* Fed. R. Civ. P. 23(b)(3)(A). Second, aside from actions already consolidated with this case, the record does not identify "any litigation concerning the controversy already begun by or against class members." *See* Fed. R. Civ. P. 23(b)(3)(B). Third, the record contains no indicia of "undesirability of concentrating the litigation of the claims in [this] forum." *See* Fed. R. Civ. P. 23(b)(3)(C). Finally, as framed by the Settlement Agreement herein, the Court does not anticipate likely difficulties in the management of this action. *See* Fed. R. Civ. P. 23(b)(3)(D).

Accordingly, the Court finds that it would likely "certify the class for purposes of judgment on the propos[ed]" settlement. Fed. R. Civ. P. 23(e)(1)(B)(ii).

**B. Preliminary Fairness Determination**

The Court must next make a preliminary determination whether the proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). The Court addresses the applicable factors below.

//

*i. Adequacy of Representation*

The Court determined above that the adequacy requirement of Fed. R. Civ. P. 23(a)(4) is likely satisfied here. The inquiries under Rule 23(a)(4) and Rule 23(e)(2)(A) are similar. *See Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (concluding that a district court's Rule 23(a) inquiry is relevant to its inquiry into "whether a proposed class settlement is fair under the revised Rule 23(e)").

The Ninth Circuit instructs Courts to be "particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947. Such signs include "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded," "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class," or "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal quotation marks and citations omitted). The Court finds no such indicia of collusion here. *See also Chambers v. Whirlpool Corp.*, 980 F.3d 645, 669 (9th Cir. 2020) ("The district court also correctly determined there was no collusion because: (i) the parties did not agree to an amount or range of attorney's fees, but left the matter to the court; (ii) there is no common fund that reverts back to [the defendant]; and (iii) the parties settled via arm's length negotiations before an experienced mediator."). The Court concludes that "the class representatives and class counsel have adequately represented the class." *See* Fed. R. Civ. P. 23(e)(2)(A).

*ii. Arm's Length Negotiation*

The Court finds that the Settlement Agreement was negotiated at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(B). The parties litigated this case for more than a year, briefed multiple motions to dismiss, and participated in a full-day private mediation before an

experienced mediator. *See* ECF No. 51-1 at 20. As discussed above, class counsel is experienced in class action litigation, has adequately represented the class, and there are no indicia of collusion.

*iii. Adequacy of Relief*

In determining whether the relief provided to the class is adequate, the Court considers: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv); *see also In re Mego*, 213 F.3d at 458 ("Assessing a settlement proposal requires a district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.").

Plaintiffs have estimated that the $9.9 million Settlement Amount represents approximately 12.375% of the damages potentially recoverable to the class. *See* ECF No. 53 at 8. The Court requested supplemental briefing on the basis for this estimate, and Plaintiffs have provided a further explanation of their expert's damages analysis that preceded the settlement. *See* ECF No. 56 at 5–8.

The Parties have addressed at length their position on the obstacles to recovering a jury award in excess of the relief provided in the Settlement Agreement. "A court, when asked to certify a class, is merely to decide a suitable method of adjudicating the case and should not turn class certification into a mini-trial on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) (internal quotation marks omitted). Without adjudicating the merits, the Court determines that the case is complex, is likely to be

expensive and lengthy to trial, and that many serious hurdles remain before the case is presented to a jury.

In light of the costs, risks, and delay associated with trial and appeal, the Settlement Amount of $9,900,000 is significant. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego*, 213 F.3d at 459 (citation omitted). In *In re Mego*, the Ninth Circuit upheld a district court's finding that a settlement amounting to "one-sixth of the potential recovery" was "fair and adequate." *Id.* Other courts in this district have approved settlement amounts at a comparable level to this one. *See, e.g., Diaz v. Solar Turbines, Inc.*, No. 3:20-cv-01156-WQH-KSC, 2022 WL 3161900, at *5 (S.D. Cal. Aug. 8, 2022) (approving a settlement amount of $1,800,000 compared to a total potential recovery of over $13,000,000, representing a settlement of approximately 13.85% of the potential recovery); *Hunter v. Nature's Way Prods., LLC*, 3:16-cv-00532-WQH-AGS, 2020 WL 71160, at *6 (S.D. Cal. Jan. 6, 2020) (approving a settlement amount of $1,850,000 compared to a total potential recovery of over $12,900,000, representing a settlement of approximately 14.34% of the potential recovery). Additionally, Liberty Mutual engaged a rebuttal expert who estimated damages, maximally, at less than $7 million. *See* ECF No. 55 at 6–7. The foregoing supports the fairness and adequacy of the settlement.

Next, the Court turns to the effectiveness of the proposed method of distributing relief to the class. Upon preliminary approval, Liberty Mutual "will provide the Claims Administrator a list from then available records of the names and last known email and postal addresses of each putative Settlement Class member." ECF No. 51-1 at 17. The Claims Administrator will "establish a Settlement website using a mutually agreed-upon URL, enabling Settlement Class members to update their mailing addresses, and to elect electronic payment." *Id.* The Claims Administrator will then "notify Class List members of the putative Settlement and opt-out procedures by email (or by regular mail if no email address is available, with specified follow-up procedures including skip-tracing efforts for

undeliverable notices).” *Id.* at 17–18. Class members will “not be required to submit claims to receive payment” and can receive payment “by mailed check or, if elected, through electronic methods like Venmo or Paypal.” *Id.* at 16. Courts have approved similar straightforward proposals for distribution of settlement funds. *See, e.g., Schmidt v. Vision Serv. Plan*, 2:20-cv-02400-KJN, 2024 WL 307758, at *10 (E.D. Cal. Jan. 26, 2024) (approving a proposed method of distribution whereby “[c]lass members [did] not have to submit claims to receive payment” but instead were “identified through defendants’ employment records,” the administrator would search for class members’ most recent addresses, and class members would receive the settlement by mail unless they opted out).

The Court next considers the terms of any proposed award of attorney’s fees. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). The Settlement Agreement does not condition Court approval on any attorney’s fees award. *See* ECF No. 51-1 at 29–30. Rather, the Agreement commits the fee award to the discretion of this Court. *Id.* This term favors preliminary approval. At this stage, the Court need not reach the reasonableness of any yet-to-be requested attorney’s fee award.

The Parties have not filed a statement under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). This factor is therefore neutral.

On balance, the foregoing factors favor a finding that the settlement is adequate.

*iv. Equitable Treatment of Class Members*

Lastly, the Court must determine whether the Settlement Agreement “treats class members equitably relative to each other.” Fed. R. Civ. P. 23(e)(2)(D). In evaluating the adequacy of the settlement amount, courts routinely consider the clarity of the proposed settlement allocation formula. *See, e.g., Fletcher v. Verizon Commc’ns Inc.*, 3:09-cv-01736-LAB-JMA, 2010 WL 11684817, at *2 (S.D. Cal. Nov. 17, 2010); *Dirienzo v. Dunbar Armored, Inc.*, No. 3:09-cv-02745-DMS-JMA, 2011 WL 13356107, at *3 (S.D. Cal. Apr. 4, 2011). In response to the Court’s order, the Parties jointly submitted a proposed settlement allocation formula that allocates the Settlement Amount among class members according to a reproducible formula that takes into account the premium paid by the class

member under their prior policy. *See* ECF No. 53-2, ECF No. 54 at 2 (noting that the Court will consider the allocation plan in determining whether to grant preliminary approval). The Court finds that the proposed allocation method treats class members equitably relative to one another.

Accordingly, the Court preliminarily determines that the proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2).

**C. Adequacy of Proposed Class Notice**

Plaintiffs' unopposed motion also requests Court approval of proposed class notice. The Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The Settlement Agreement provides as follows. Liberty Mutual, within thirty (30) days of preliminary approval, must provide the Claims Administrator a list of each class member's name, last known email address, and last known postal address. ECF No. 51-3 at 16. Within forty-five (45) days of preliminary approval, the Claims Administrator must send the Short Form Notice by email to all members on the list. *Id.* If an email address is not available, the Administrator must take "all reasonable steps to obtain a mailing address,

including performing a skip trace, and shall email the Short Form Notice to any other email address obtained or mail the Short Form Notice to any physical address." *Id.* The Administrator is also required to notify Plaintiffs' counsel and Liberty Mutual's counsel of any Short Form Notices or Election Forms returned as undeliverable. *Id.* at 17.

The Settlement Agreement further requires that the Short Form Notice advise class members of their rights, including their right to be excluded from and to object to the Agreement, and must also direct class members to the Long Form Notice on a website. *Id.* at 17. The website, which the Agreement requires the Settlement Administrator to establish within ten (10) days of preliminary approval, "shall at a minimum include, in a downloadable format, (i) the Long Form Notice; (ii) the Preliminary Approval Order; (iii) the Agreement, including all of its exhibits; and (iv) any other materials agreed upon by the Parties and/or required by the Court." *Id.* at 17–18. The Long Form Notice must provide detailed information on the procedures for objecting to the Settlement Agreement or opting out. *Id.* at 18.

The Agreement provides that if the proposed notice "does not achieve a minimum level of 80% reach, . . . the Parties, in conjunction with the Claims Administrator, shall develop and seek approval by the Court of such supplemental notice as is necessary to achieve a minimum level of 80% reach or satisfy the Court that all Due Process requirements are satisfied." *Id.* at 18.

The Court finds that the Settlement Agreement's proposed notice procedures comport with the Due Process Clause. *See in re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 779 (9th Cir. 2022) (finding that comparable notice procedures satisfied due process requirements). However, the Short Form and Long Form Notices appear to contain inaccuracies. The Short Form and Long Form Notices provide the wrong court for the Final Approval Hearing. *See* ECF No. 51-5 at 4; ECF No. 51-6 at 9. The Long Form Notice inaccurately indicates that the Settlement Amount "will be distributed equally to Settlement Class Members." *Id.*

Within ***seven (7) days of the date of this order***, the Parties shall file an Amended Short Form Notice and Long Form Notice with the Court, and highlight or otherwise identify the foregoing and any other revisions that counsel have made. The Court otherwise finds that the Settlement Agreement and proposed Notices are adequate, and upon review of the amended notices will enter an order regarding approval of the notices and setting a date for a final approval hearing.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' unopposed motion for preliminary approval, ECF No. 51, as follows:

1. The Court **PRELIMINARILY CERTIFIES** the following Class for settlement purposes only: "All California owners of Liberty Mutual homeowners' insurance policies who, during the period December 1, 2023 to the date of the certification of a settlement class, were denied renewal of that policy based on a condition of their property. Excluded from the Settlement Class are Liberty Mutual, Liberty Mutual's officers, directors, agents, trustees, representatives, employees, principals, servants, partners, joint venturers, and/or entities controlled by Liberty Mutual."
2. The Court **PRELIMINARILY APPOINTS** Singleton Schreiber, LLP as Class Counsel.
3. The Court **PRELIMINARILY APPOINTS** Maria Badin, David Ginsberg, and Yvonne Davis as Settlement Class Representatives.
4. The Court **PRELIMINARILY APPOINTS** RG/2 Claims Administration as the Settlement Administrator, pursuant to the terms of the Settlement Agreement.
5. Plaintiffs shall file an amended Short Form Notice and Long Form Notice with the Court, as directed by this Order.

**IT IS SO ORDERED.**

Dated: November 24, 2026

Hon. Robert S. Huie
United States District Judge